[Civ. No. 63319. Second Dist., Div. Five. Dec. 20, 1982.]

EARL H. DONOVAN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
COUNTY OF LOS ANGELES et al., Respondents.

324

COUNSEL

Mohi & Glasman, Charles Glasman and Barry Appel for Petitioner.

John H. Larson, County Counsel, Milton J. Litvin and Daniel E. McCoy, Deputy County Counsel, Richard A. Krimen, Michael J. Brodie, Arthur Hershenson, Fernando Da Silva and Louis Harris for Respondents.

## OPINION

**STEPHENS, J.**—This is a writ petition for review from an award made in a Workers' Compensation Appeals (board) Board order.

The facts are that on October 26, 1973, Thomas Finnerty, Jr., filed a petition claiming that from December 3, 1947, he had sustained an injury to his nervous system while working as a Deputy District Attorney for the County of Los Angeles. On January 20, 1976, an opinion and decision after reconsideration was issued. The finding supported the claim of injury and it was found that Finnerty was 100 percent disabled. During a portion of the period of injury the county was insured by State Compensation Insurance Fund. Finnerty died on November 26, 1976, following a short hospitalization caused by a suicide attempt.[1] Petitioner, one Earl H. Donovan (petitioner), claimed to be the live-in associate and dependent of Finnerty. On July 18, 1978, the Workers' Compensation Judge (Narvid) issued a decision finding that Donovan was not a dependent within the meaning of Labor Code section 3503.[2]

Petitioner's petition for reconsideration was granted. Following further hearings and the taking of medical evidence, on May 28, 1981, the appeals board issued its opinion and decision. It found that the suicide-activated death excluded compensability stating that petitioner had failed to carry his burden of proving the elements of his case, i.e., that the suicide was job connected and the result of an irresistible impulse.[3]

 The problem presented on this petition for review appears twofold. First, the board failed to fully recognize Finnerty's 100 percent disability with suicidal tendency depression. With this in mind, we see little or no distinction between the rationale adopted by the Supreme Court in *Haft v. Lone Palm Hotel* (1970) 3 Cal.3d 756, 765 [91 Cal.Rptr. 745, 478 P.2d 465] and the one applicable here. In *Haft*, the court was dealing with a wrongful death case. Plaintiffs had established multiple violations of swimming pool statutory and regulatory safety violations establishing defendants' negligence as a matter of

---

[1] Finnerty had previously attempted suicide on more than one occasion.

[2] Henceforth all code references relate to the Labor Code unless otherwise noted.

[3] "The death of Thomas Finnerty, Jr. did *not* result from a suicide attempt that was the product of an industrially caused mental condition that prevented him from being able to control the impulse to control himself."

law. The question presented was the causal connection between the deaths and the violations. The *Haft* court stated at page 765: "For the reasons discussed below, we have concluded that after plaintiffs proved that defendants failed to provide a lifeguard or to post a warning sign, the burden shifted to defendants to show the absence of a lifeguard did not cause the deaths." At page 772, following detailed analysis, the court said: "Under these circumstances the burden of proof on the issue of causation should be shifted to defendants to absolve themselves if they can" and again at page 775: ". . . [The pool owner] cannot take refuge in the position that the burden of proof rests with the probable victim of his statutory violation." In the case before us, the employment had victimized Finnerty to the extent of rendering him 100 percent disabled with suicidal tendency depression. There were no eyewitnesses to his actually attempting the suicide though he was observed sometime before the event and shortly after its occurrence. The most direct evidence of Finnerty's state of mind rested in the expert medical testimony. The board, in its opinion and discussion, stated: "Dr. Martin Goldfarb, reporting for applicant, stated that death was caused by a combination of the conditions listed in the Veterans Administration Hospital records. He concluded that the cardiac pulmonary and neurological complications were a direct result of the decedent's suicide attempt. (Report of November 2, 1977.)

"We will accept Dr. Goldfarb's conclusion that the suicide attempt had a causal relationship to the death."

In addition, Dr. Sosner testified at the hearing of June 20, 1980, stating that his opinion on the relationship of the employee's suicidal act and the original injury to the psyche was as set forth in his report of March 22, 1977. In that report, the doctor had written: "In my opinion the industrial accident injury which Mr. Finnerty suffered as a result of the emotional stresses which he suffered on his job as deputy district attorney for the County of Los Angeles contributed in a significant degree to his emotional deterioration which ultimately led to his suicide." He further testified that "His suicide in my opinion was the direct outgrowth of his emotional illness, his depression which was of psychotic proportions. And his depression, in my opinion, was caused by the stresses of his employment." Thus, petitioner had produced substantial evidence supportive of his position.

The board couched its finding in the negative, seeking to support that finding by reasoning that: "The only expert psychiatric evidence in the record relating to the issue of the decedent's mental condition prior to the suicide attempt is the testimony of Dr. Bernard Sosner. Dr. Sosner believed that the deceased's suicide attempt was directly related to his depression and that this depression was related to his employment stresses. But he does not state that the decedent was unable to control the impulse to commit suicide. Nor does it appear that

Dr. Sosner was in a position to give an opinion about this. He had not examined the decedent since December 1973, almost three years before the suicide attempt and based his opinion on the Veteran's Administration Hospital records (which were based on treatment the decedent obtained over a year before his suicide attempt), the death certificate, and a report from Dr. Samuel Benjamin dated March 10, 1974. While the records could be used as evidence of how the decedent's condition was progressing over a period of time, they do not indicate what the decedent's condition was, shortly before his suicide attempt. Dr. Sosner's testimony then cannot be taken as sufficient to establish that the decedent's suicide attempt was the product of an 'irresistible impulse.' " What the board apparently failed to consider was Dr. Sosner's conclusion (in his report): "Mr. Finnerty's condition is permanent and stationary. The degree of disability is severe."

The sole evidence negating the prima facie case came from petitioner himself. The board apparently seized on portions thereof to reach their result. We need not analyze the sufficiency of such evidence for the board erroneously placed the burden of proof upon the wrong party. (*Burnight* v. *Industrial Acc. Com.* (1960) 181 Cal.App.2d 816, 823 [5 Cal.Rptr. 786].) ▮ There, the court said "Where an employee receives an industrial injury and the resultant pain is such that he believes he cannot continue to stand it, where he becomes so depressed that he feels that there is only one way out, where any condition results which causes him to feel that death will afford him his only relief, his act of suicide is one directly resulting from his injury, *unless it appears that he could have resisted the impulse to so act.*" (Italics added.) Thus, in fact, *Burnight* analyzed the problem of proof of causal connection between employment and the suicide, in much the same manner as was approved in *Haft*, by effectively shifting the burden of proof once a prima facie case had been established.

While the board cited a portion of *Burnight* in its opinion,[4] it misread the true meaning of the quote. That meaning was expressed earlier on the same page (821). *Burnight* explained the proper rule to be ". . . that where the injured person has a condition of insanity resulting from the injury which either prevents him from realizing the nature of his act *or controlling his conduct,* his suicide is to be regarded either as a direct result and no intervening force at all, or as a normal incident of the risk for which defendant is liable. (See Prosser, Law of Torts (2d ed.) pp. 273-274.) We said further that it makes no difference that the decedent 'knew what he was doing.' If the defendant is to avoid liability the decedent's act must be voluntary, not in that sense but in the sense that he could, in spite of his mental illness, have decided against suicide and refrained from killing himself." That court continued its explanation on subsequent pages

---

[4]". . . suicide cannot be *intentionally* self-inflicted if, in spite of his act being one of conscious volition, the suicide, because of mental condition resulting from the injury, is unable to control the impulse to kill himself." (Italics in original.) (P. 821.)

and concluded on page 825, "[i]t is a contradiction in terms to state that there is no causal connection between an injury which causes a manic-depressive state and a suicide which results from that state even though there be a conscious volition connected with it. Volition may be denominated by the mental condition. It is the injury which sets the forces in motion which ultimately bring about the suicide." On page 827 that court also stated: "In our case there is no evidence that decedent would have taken his life were it not for the mental condition which the commission found was due to his industrial injury. . . . It is unreasonable and unrealistic to hold that suicide occurring when the employee is in such a state is not the result of the industrial injury when the manic-depressive state is. If suicide is a result which may be expected from a manic depressive condition, how can such a result be said to be *intentionally* self-inflicted, even though the person may know what he is doing and its results? The manic depressive condition provides the irresistible impulse. Mere realization of the nature and effect of the suicidal act cannot be controlling."

 The board should have recognized the burden of proof shifting to the county and fund and reversal is therefore necessary. However, there is a second and at least equal reason the board's order cannot stand.

This second necessity for returning this case to the board is that it failed to make a finding of the dependency status of petitioner. Recognizing the obvious, the only petitioners for worker's compensation benefits are the employee and dependents. Labor Code section 3503 reads in part: "No person is a dependent of any deceased employee unless in good faith a member of the family or household of the employee. . . ." At the threshold of any award by the board must be the finding that the petitioner qualifies under the code definition of dependent. In the instant case, no such finding exists; however, the board made an award in favor of petitioner "of medical-legal costs and an amount to be adjusted."

There is no contra case or statutory authority to the rule expressed in *Zarate* v. *Workers' Comp. Appeals Bd.* (1979) 99 Cal.App.3d 598 [160 Cal.Rptr. 408]. In *Zarate,* the court was construing section 4600. This section provides for certain items of recovery by an employee including expenses and medical costs. There, it held that a person, determined not to be an employee, could *not* be awarded medical-legal costs.

Though we are construing section 3503 (not § 4600), the same reasoning as expressed in *Zarate* is dictated. We necessarily conclude that a petitioner who is found *not* to be a dependent is *not* entitled to any award.[5] The

---

[5] In petitioner's "Petition for Reconsideration" filed with the board on or about August 1, 1978, and in opposition to the finding and order of Narvid that petitioner was not a dependent, it is stated "There is no requirement that there be a dependent in order to recover medical—legal costs." No authority is cited for this allegation.

dependency issue was purposefully avoided by the board in the instant case for it was confronted with the problem of an alleged homosexual live-in partner as claimant. The board had before it petitioner's claims of "dependency" and "relationship." It also permitted examination of Dr. Sosner as to whether he considered, in his diagnosis, the *fact* that Finnerty was homosexual. The doctor stated he had *not* considered that fact because Finnerty denied any such sexual bent. According to the report of a Dr. Benjamin, Finnerty denied he had "heterosexual problems" and *he denied being a homosexual.* The evidence before the board on that issue is in conflict. Providing the board, on rehearing, determines that issue in conformity with Finnerty's declarations, there will develop a credibility issue as to petitioner's other claims including the extent of "dependency" if any. Merely because two persons of the same sex occupy a single residential structure does not dictate either the sexual influences or dependency within the meaning of the code. ■ ■■■■ It is necessary however for the board to determine the primal issue of dependency status made to a petitioner.[6]

The decision is reversed and remanded to the board for further proceedings and findings in conformity with this opinion.

Feinerman, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied January 11, 1983, and the petitions of respondents County of Los Angeles and State Compensation Insurance Fund for a hearing by the Supreme Court were denied February 16, 1983.

---

[6]We note another ruling necessary to this case. It was not touched upon in the arguments before the board or before this court. In case the finding of the board ultimately is that Finnerty's death was work related but that petitioner is not a dependent, then its award of such death benefit should go to the Department of Industrial Relations (unless other persons recognized in Lab. Code, § 3503 qualify). [Finnerty left two sisters living at his death.] (*Atlantic Richfield Co. v. Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715 [182 Cal.Rptr. 778, 644 P.2d 1257].) The board, in its consideration of the dependency issue, must determine dependency "as of the date of the employee's injury which results in death, not as of the date of death." (*Atlantic Richfield, supra,* at p. 722.) Whether the time interval will make any difference in the dependency finding or not we express no opinion. We do note, however, in the deposition of petitioner, he stated that between 1973 and Finnerty's death in 1976, petitioner never stayed overnight in the Finnerty house. Petitioner stayed either at a lady friend's house or at a residence petitioner had purchased in South Pasadena. The funds for purchase were stated to be from Finnerty. He also testified that the house he "shared" with Finnerty was owned by him, not Finnerty, though the purchase funds were supplied by Finnerty.