[No. B044433. Second Dist., Div. Four. May 22, 1990.]

ROSALINA RUBALCAVA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, PIZZAMANIA
et al., Respondents.

**COUNSEL**

Lewis, Marenstein & Kadar, Lawrence D. Rosenberg and Allan A. Senkow for Petitioner.

Krimen, Hershenson, Da Silva & Daneri and Robert A. La Porta for Respondents.

**OPINION**

**WOODS (A. M.), P. J.**—In this review proceeding, we conclude respondent Workers' Compensation Appeals Board (Board) erred in rescinding the finding of the workers' compensation judge (WCJ) that petitioner's earning capacity is sufficient to produce permanent disability indemnity at the maximum rate under Labor Code section 4453, subdivision (c)(4).[1]

Petitioner (applicant) admittedly sustained industrial injury to her left hand on April 10, 1986, when her fingers were amputated by a cheese grinder she was operating in the course of her employment by defendant

---

[1] In 1986 Labor Code section 4453, subdivision (c) provided: "Between the limits specified in subdivisions (a) and (c), the average weekly earnings, except as provided in Sections 4456 to 4459, shall be arrived at as follows: [¶] (1) Where the employment is for 30 or more hours a week and for five or more working days a week, the average weekly earnings shall be 100 percent of the number of working days a week times the daily earnings at the time of the injury. . . . [¶] (4) Where the employment is for less than 30 hours per week, or where for any reason the foregoing methods of arriving at the average weekly earnings cannot reasonably and fairly be applied, the average weekly earnings shall be taken at 100 percent of the sum which reasonably represents the average weekly earning capacity of the injured employee at the time of his or her injury, due consideration being given to his or her actual earnings from all sources and employments."

Labor Code section 4453 was amended in 1989. The amendment did not revise subdivision (c)(4) and made only a minor revision of subdivision (c)(1). The amendment added subdivision (d), which provides: "Every computation made pursuant to this section beginning January 1, 1990, shall be made only with reference to temporary disability or the permanent disability resulting from an original injury sustained after January 1, 1990. However, all rights existing under this section on January 1, 1990, shall be continued in force. Except as provided in Section 4661.5, disability indemnity benefits shall be calculated according to the limits in this section in effect on the date of injury and shall remain in effect for the duration of any disability resulting from the injury."

Pizzamania, insured by defendant State Compensation Insurance Fund (SCIF). Orthopedic permanent disability attributable to the left hand injury was not disputed; and the matter proceeded to trial on the issue of psychiatric disability and other issues.

Applicant was 19 years of age at the time of the injury. She testified her job at Pizzamania involved "topping" pizzas, preparing food, and waiting on customers; she worked approximately thirty-two hours a week for five days a week, was paid $4 an hour, and received one meal a day; she was also a full-time student at Rio Hondo College, completing her general education in order to attend a four-year college with a career goal of sales merchandise or accounting; in discussions with her counselor in the rehabilitation program following her injury, she decided on accounting, and plans to go to California State University, Fullerton (CSUF) to get an accounting degree or to go into auditing; and she is still at Rio Hondo College, taking accounting, economics, art, and public address, which are the basic courses necessary to transfer to CSUF.

Applicant testified further that since the injury to her left hand, she does everything with her right hand; she has only nubs for two of the fingers, and a third finger is cut off at the middle joint; with her left hand she can pinch objects and hold certain things for a short while; she gets very depressed and self-conscious about her left hand, and hides it because she feels people will think she was born that way; and she has been examined and treated by several physicians, including psychiatrists.

Dr. Schusselin, a psychiatrist, diagnosed posttraumatic stress disorder with anxiety, depression, poor recollection, and flashbacks of the accident. He concluded, however, that applicant has been able to recover physically and emotionally; psychiatrically, she admits her feelings of anxiety and depression are gone; she is much less self-conscious about her left hand, and even though she is still self-conscious about it, she denies she is prevented from having a normal, regular, everyday life; the degree of permanent psychiatric disability is minimal to very slight; and she is not restricted psychiatrically in competing in the open labor market.

Dr. Friedman, a psychiatrist, in essence agreed that applicant's condition was improving. He opined, however, that the true extent of her psychiatric disability will only manifest itself when she "becomes a full-grown adult needing to compete in the open labor market"; when she finds herself automatically disqualified from substantial portions of the open labor market, she will suffer increased feelings of shame, humiliation, and lowered self-esteem; and this will take its toll on her future interpersonal and sexual life. Dr. Friedman concluded: "In view of these predictions and despite the

relatively mild observable symptomatology at present, I believe the rating in the range of slight to moderate . . . is appropriate."

Relying on Dr. Friedman's opinion of slight to moderate psychiatric permanent disability and the undisputed evidence of orthopedic permanent disability, the WCJ found the industrial injury caused 72¾ percent permanent disability. Based on applicant's testimony she worked 32 hours a week, the WCJ found her actual earnings were $151.75 a week and her earning capacity at the time of the injury justified a maximum disability rate of compensation.

SCIF petitioned for reconsideration, challenging the WCJ's findings as to the extent of applicant's psychiatric permanent disability and the disability compensation rate.

The WCJ reported on reconsideration that his finding of permanent psychiatric disability was based on Dr. Friedman's opinion, substantiated by applicant's testimony she gets very depressed and is self-conscious about her hand; and hence, the finding of slight to moderate disability was appropriate.

As to the finding of maximum compensation rate, the WCJ reported that at the time of the injury applicant was a full-time student pursuing a degree in accounting or marketing, she is attractive, and there is no reason she should not succeed in her pursuit of a degree and a position in commerce; she has decided on accounting as a career and intends to become a certified public accountant; these circumstances justify a finding her occupation at the time of injury was merely to help her get through school and is in no way indicative of her earning capacity; her earning capacity is maximum; and there is no reason to conclude otherwise.

The Board unanimously granted reconsideration, rescinded the WCJ's findings as to the extent of psychiatric permanent disability and the disability compensation rate, and found applicant sustained 57 percent permanent disability. In a split decision, the Board majority concluded the disability compensation rate should be based on her actual earnings at the time of injury.

The two-member Board majority opined the WCJ erred in relying on Dr. Friedman's opinion of slight to moderate psychiatric permanent disability, since Dr. Friedman's prediction, that despite applicant's present "relatively mild observable symptomatology" her disability would increase in the future, is speculative and is not a reasonable basis for determination of applicant's present disability. Therefore, the Board majority concluded, based on

the opinion of Dr. Schusselin, the present psychiatric permanent disability is minimal to very slight; and, if applicant's psychiatric disability increases later, as Dr. Friedman predicts, then applicant's remedy will be to petition to reopen under Labor Code sections 5410 and 5803 to obtain an increased award of permanent disability indemnity.

As to the disability compensation rate, the Board majority opined that such rate is determined on the basis of actual weekly earnings at the time of injury unless the injured employee is working less than 30 hours per week or the actual earnings are not a fair and reasonable measure of the employee's earning capacity (Lab. Code, § 4453, subd. (c)(4); *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 589 [21 Cal.Rptr. 545, 371 P.2d 281]); and determining the compensation rate based on actual earnings, rather than on earning capacity, may not be fair and reasonable where there is evidence the worker's postinjury, long-term earnings would likely have increased. (*Goytia* v. *Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 889 [83 Cal.Rptr. 591, 464 P.2d 47] [seasonal worker with minimal earnings at time of the injury subsequently obtained full-time employment with higher earnings]; *Thrifty Drug Stores, Inc.* v. *Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 937 [157 Cal.Rptr. 459] [specific demonstrable evidence that injured worker would have received her pay increases under collective bargaining agreement, but for her injury]; *Pascoe* v. *Workmen's Comp. Appeals Bd.* (1975) 46 Cal.App.3d 146 [120 Cal.Rptr. 199] [nurse's aide at time of injury was studying to be a registered nurse]; *Jeffares* v. *Workmen's Comp. App. Bd.* (1970) 6 Cal.App.3d 548 [86 Cal.Rptr. 288] [part-time worker at time of injury studying to obtain teaching credential].)

Applying these cited authorities to the facts here, the Board majority concluded there is no specific demonstrable evidence applicant would have gone on to obtain higher earnings but for her injury; in light of applicant's limited record in school, it is simply too speculative to assume she would have completed her education and obtained greater earnings; and thus, applicant's disability compensation rate should be based on her actual earnings of $151.75 a week at the time of the injury.

The remaining Board panel member concurred in the majority opinion on the issue of the extent of applicant's permanent disability, but dissented on the issue of the disability compensation rate, opining that she would affirm the WCJ's finding as to the compensation rate for the reasons reported by the WCJ.

We conclude that there is sufficient evidence to support the Board's determination of 57 percent permanent disability, but conclude that the Board erred in determining the disability compensation rate.

■ Preliminarily, we note the Board is empowered on reconsideration to resolve conflicts in the evidence, to make its own credibility determinations, and to reject the findings of the WCJ and enter its own findings on the basis of its review of the record; nevertheless, any award, order, or decision of the Board must be supported by substantial evidence in the light of the entire record. (*Lamb* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [113 Cal.Rptr. 162, 520 P.2d 978]; *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]; *Bracken* v. *Workers' Comp. Appeals Bd.* (1989) 214 Cal.App.3d 246, 255 [262 Cal.Rptr. 537].)

The foregoing standard of review by the Board is not met by isolating evidence that supports the Board's decision and ignoring other relevant facts of record that rebut or explain the evidence. (*Bracken* v. *Workers' Comp. Appeals Bd., supra,* 214 Cal.App.3d at p. 255.) Medical reports and opinions are not substantial evidence if based on surmise, speculation, conjecture, or guess. (*Id.* at pp. 255-256.) When the WCJ's finding is supported by solid, credible evidence, it is to be accorded great weight by the Board and should be rejected only on the basis of contrary evidence of considerable substantiality; and the WCJ's findings on credibility are entitled to great weight because the WCJ has the opportunity to observe the demeanor of the witnesses and weigh their statements in connection with their manner on the stand. (*Id.* at p. 256.)

■ In resolving the petition for writ of review, we must determine whether the evidence, when reviewed in the light of the entire record, supports the Board's decision; and in doing so, we must consider the weight or persuasiveness of all the evidence, not just whether there is substantial evidence in favor of respondents employer and insurer. (214 Cal.App.3d at p. 254.)

This court is not bound to accept the Board's factual findings where they are unreasonable and do not withstand scrutiny when viewed in the light of the entire record, or where on a case-by-case examination we discern an inequitable result when the entire record is examined for fairness, reasonableness, and proportionality in the overall scheme of the workers' compensation law and the purposes sought to be accomplished by that law. (214 Cal.App.3d at p. 254.)

■ Applying the above standard of review, we conclude the Board did *not err in rescinding the WCJ's finding, and substituting the Board's finding,* on the issue of the extent of applicant's psychiatric permanent disability. It was not unreasonable for the Board to conclude that the WCJ's finding of slight to moderate disability was erroneously based on Dr. Friedman's speculative opinion as to predicted future disabilities, which is not a

reasonable basis for determination of applicant's present disability. (*Hegglin v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967]; *Place v. Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]; *Bracken v. Workers' Comp. Appeals Bd., supra,* 214 Cal.App.3d at pp. 255-256; *Insurance Co. of North America v. Workers' Comp. Appeals Bd.* (1981) 122 Cal.App.3d 905, 917 [176 Cal.Rptr. 365].) The Board based its substituted finding of minimal to slight psychiatric permanent disability on the opinion of Dr. Schusselin. (*Smith v. Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 588, 592 [78 Cal.Rptr. 718, 455 P.2d 822]; *Liberty Mut. Ins. Co. v. Workers' Comp. Appeals Bd.* (1981) 118 Cal.App.3d 265, 275 [173 Cal.Rptr. 349].) The resultant 57 percent permanent disability found by the Board was well within the range of disability ratings the competent evidence would support. (*U.S. Auto Stores v. Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 469, 475 [93 Cal.Rptr. 575, 482 P.2d 199].) If, as Dr. Friedman speculates, applicant's psychiatric disability increases in the future, applicant may petition to reopen for new and further disability. (Lab. Code, §§ 5410, 5803.)

We conclude, however, that the Board majority erred in rescinding the WCJ's finding that applicant's earning capacity at the time of the injury justified the maximum disability rate of compensation.

As the Board majority conceded, basing the disability compensation rate on the employee's actual earnings at the time of injury is unfair and unreasonable where there is specific demonstrable evidence the employee's long-term earning capacity would likely have increased. (Lab. Code, § 4453, subd. (c)(4); *Goytia v. Workmen's Comp. App. Bd., supra,* 1 Cal.3d 889; *Lujan v. Workers' Comp. Appeals Bd.* (1985) 175 Cal.App.3d 212 [220 Cal.Rptr. 561]; *Thrifty Drug Stores, Inc. v. Workers' Comp. Appeals Bd., supra,* 95 Cal.App.3d 937; *Pascoe v. Workmen's Comp. Appeals Bd., supra,* 46 Cal.App.3d 146; *Jeffares v. Workmen's Comp. App. Bd., supra,* 6 Cal.App.3d 548.)

Here, the Board majority erroneously concluded there was no specific demonstrable evidence to support the WCJ's finding that applicant's earning capacity justified disability compensation at the maximum rate. Unlike the WCJ and dissenting Board panel member, the Board majority disregarded the mandate that it review the evidence in light of the entire record. (*Lamb v. Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at pp. 280-281; *Bracken v. Workers' Comp. Appeals Bd., supra,* 214 Cal.App.3d at pp. 256-257.) Instead, the Board majority erroneously relied on portions of the evidence that tended to support its conclusion, while ignoring other evidence relevant to determining the disability compensation rate. (*Bracken, supra,* at pp. 255-257.) The Board majority also failed to give great weight

to the WCJ's observation of applicant's demeanor and his finding that she is a very credible witness. (*Garza* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d at pp. 318-319; *Bracken* v. *Workers' Comp. Appeals Bd., supra,* 214 Cal.App.3d at p. 256.)

Viewed in the light of the entire record, there is specific demonstrable evidence applicant is oriented toward a definite career goal in commerce and is capable of achieving that goal. Her actual part-time earnings while working her way through school at the time of the injury were obviously not indicative of her earning capacity, as the WCJ and dissenting Board panel member properly concluded. It can also be inferred from the record that the Board majority's reduction of applicant's psychiatric disability to "minimal to very slight" indicates there will be in effect no psychiatric deterrence to applicant in achieving her career goal. The evidence supports the WCJ's finding applicant's earning capacity justifies disability compensation at the maximum rate; and the Board majority erred in rescinding this finding and substituting its own finding basing the compensation rate on applicant's actual earnings at the time of the injury.

We note further that we are not bound to accept the Board majority's finding as to the compensation rate when it is unreasonable, does not withstand scrutiny when viewed in the light of the entire record, and leads to an inequitable result when the entire record is examined for fairness, reasonableness, and proportionality in the overall scheme of the workers' compensation law and the purposes sought to be accomplished by that law. (*Bracken* v. *Workers' Comp. Appeals Bd., supra,* 214 Cal.App.3d at pp. 257-258.) We also note that Labor Code section 3202 requires the courts to view the Workers' Compensation Act from the standpoint of the injured worker, with the objective of securing the maximum benefits to which he or she is entitled. (*Johnson* v. *Workers' Comp. Appeals Bd.* (1984) 37 Cal.3d 235, 241 [207 Cal.Rptr. 857, 689 P.2d 1127]; *Hutchinson* v. *Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 372, 375-376 [257 Cal.Rptr. 240]; *Trevino* v. *Workers' Comp. Appeals Bd.* (1989) 207 Cal.App.3d 1012, 1016 [255 Cal.Rptr. 162]; *Lujan* v. *Workers' Comp. Appeals Bd., supra,* 175 Cal.App.3d at pp. 216-217.)

The July 20, 1989, decision by respondent Workers' Compensation Appeals Board is annulled as to the finding of the disability compensation rate (finding No. 2) and affirmed as to all other findings; and the matter is

remanded to the Board for further proceedings and an award consistent with the views expressed herein.

George, J., and Goertzen, J., concurred.

Respondents' petition for review by the Supreme Court was denied August 1, 1990.