[No. D025723. Fourth Dist., Div. One. Oct. 1, 1996.]

MICHELLE CHU et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and CITY OF SAN
DIEGO, Respondents.

COUNSEL

David B. Dugan for Petitioners.

John W. Witt, City Attorney, Anita M. Noone, Chief Deputy City Attorney, and Charles H. Markham, Deputy City Attorney, for Respondents.

OPINION

McDONALD, J.—Benjamin Chu (Chu), a probationary sergeant with the San Diego Police Department (the Department), committed suicide. His wife (Michelle) and children sought workers' compensation death benefits. A workers' compensation judge (WCJ) found that the suicide was the proximate result of injury which arose out of and occurred in the course of Chu's employment as a police officer, and awarded death benefits. The Workers' Compensation Appeals Board (the Board), with one member dissenting, reversed the WCJ and denied death benefits. In this opinion we conclude the Board's decision is not supported by substantial evidence and reinstate the award of the WCJ.

## BACKGROUND

Chu was born in Korea and came to San Diego in his mid-20's. He married Michelle, a Korean woman. By the age of 32, Chu was the first Korean police officer in the Department. The Chus had a son the next year. After five years with the Department, Chu was elevated to sergeant, a promotion that usually takes from seven to ten years. After being promoted to sergeant, Chu and Michelle had a second child. Chu was a leader in the Korean community and was respected within the community and the Department. Chu loved his work and his position in the community.

Chu was appointed sergeant subject to one year's probation. During the first quarter, he was not assigned a squad. His first quarter evaluation was satisfactory but incomplete because of the evaluator's inability to rate his command ability. During the second quarter, Chu's evaluator was Lieutenant Fay, who found Chu's command ability, interpersonal skills and report writing ability to be unsatisfactory. Lieutenant Fay gave Chu a substandard second-quarter evaluation. During the third quarter, Chu was supervised by Lieutenant Fay and by Lieutenant Gonzales. Chu received a substandard third quarter evaluation. During the second and third quarters, Chu experienced extreme stress and became depressed. He was concerned he would not pass his probationary period and would be demoted. Lieutenant Gonzales

told Chu he could possibly become a Department liaison person with the Asian community. Chu felt the liaison position would enable him to save face within the community which he would lose if demoted.

Chu worked the night shift and was unable to sleep during the day. He worked on his written reports during the day. He took sleeping pills but nevertheless had trouble sleeping. He experienced chest pains and on one occasion was hospitalized overnight. He was concerned that if he were demoted he would lose the respect of his wife and the community. He started counseling with psychologist Dr. Jolee Brunton.

On Wednesday, June 24, 1992, Chu called Dr. Brunton. He was upset because he had learned the liaison position was not available to him. On Friday Chu met with Dr. Brunton. She described him as more positive at the meeting than during their prior telephone conversation. He told her he would fight the demotion, serve the full probationary period and ask for an extension of the probationary period. They spent the remainder of the session discussing how Chu could ask Michelle for support. Chu did not appear psychotic, irrational or suicidal to Dr. Brunton at the meeting.

On Saturday, Chu wore his uniform although it was his day off. He was extremely distraught and threatened to kill Lieutenant Fay and himself. Michelle calmed Chu and took his gun. Chu and his mother-in-law attended church. Chu talked to the priest. Upon his return home, Chu thanked Michelle and her mother for their support. Michelle felt he was born again through religion. The entire family attended Mass on Sunday and Chu played with his children and appeared normal.

On Monday Chu met with James Gattey, the attorney for the Police Officers Association. Gattey told him he had no right to due process during the probationary period; the chance of an extension of the probationary period was unlikely; and it was unrealistic to think he would get the liaison position. Chu told Gattey he was unable to sleep or eat. Chu's hand was perspiring when they shook hands at the end of the meeting. Gattey concluded Chu was suffering from stress and depression.

Later that day, Chu visited Danny Angotti, a friend and fellow police officer. Chu confided in Angotti about the problems he was having with the job and Lieutenant Fay. Chu did not know how he could please Lieutenant Fay, who seemed dissatisfied with Chu's performance even when Chu acted as directed. He talked of killing Lieutenant Fay but recognized that would not solve any problem.

Michelle testified Chu was depressed when he returned home. He did not go to bed with Michelle but watched television. About 4 o'clock the next morning, she found him dead from a self-inflicted gunshot wound.

Michelle and the children filed a claim for workers' compensation death benefits with The City of San Diego (the City). Relying on the testimony of various witnesses including Michelle and Gattey, the medical records and deposition of Dr. Brunton and the medical report and deposition of psychiatrist Dr. Donald Storbl, the WCJ concluded the performance problems and evaluations during the probationary period resulted in Chu's depression and suicide and awarded damages to the claimants. The City petitioned for reconsideration. A three-judge panel of the Board granted reconsideration and, with one judge dissenting, reversed.

Michelle and the children petitioned this court for review. We issued a writ of review and heard oral argument.

DISCUSSION

Labor Code[1] section 3600, subdivision (a)(6), prohibits recovery of workers' compensation benefits where an employee has willfully and deliberately caused his own death. An employee has not willfully and deliberately caused his own death if the employment-related ". . . injury and the resulting disability were causally related to the suicide [and] . . . [r]ecovery is proper if it is shown that without the injury there would have been no suicide." (*Ballard* v. *Workmen's Comp. App. Bd.* (1971) 3 Cal.3d 832, 837 [92 Cal.Rptr. 1, 478 P.2d 937]. See *Burnight* v. *Industrial Acc. Com.* (1960) 181 Cal.App.2d 816, 825, 827-828 [5 Cal.Rptr. 786] (*Burnight*). See also *Beauchamp* v. *Workmen's Comp. App. Bd.* (1968) 259 Cal.App.2d 147, 153-154 [66 Cal.Rptr. 352] (*Beauchamp*), *Donovan* v. *Workers' Comp. Appeals Bd.* (1982) 138 Cal.App.3d 323, 327-328 [187 Cal.Rptr. 869] (*Donovan*), and *Redmond* v. *Workmen's Comp. Appeals Bd.* (1973) 36 Cal.App.3d 302, 307-308 [111 Cal.Rptr. 530].)

The Board found that Chu's death was not proximately caused by his employment as a police sergeant. The Board based its finding on its conclusion that Chu's suicide was a willful and deliberate act because it was taken after much thought and "consultation with his psychologist, his church, his friend, and an attorney," and would have occurred without the employment injury or resulting disability. The Board concluded the only medical report consistent with the facts was that of Dr. Reiss, the City's psychiatric evaluator. The dissenting member of the Board concluded the WCJ had

---

[1] All further statutory references are to the Labor Code.

justifiably relied on the opinions of Drs. Strobl and Brunton that Chu sustained an industrial injury and found no evidence that Chu would have taken his own life absent the stress caused by his employment.

■ "[T]he Board is empowered on reconsideration to resolve conflicts in the evidence, to make its own credibility determinations, and to reject the findings of the WCJ and enter its own findings on the basis of its review of the record; nevertheless, any award, order, or decision of the Board must be supported by substantial evidence in the light of the entire record." (*Rubalcava* v. *Workers' Comp. Appeals Bd.* (1990) 220 Cal.App.3d 901, 908 [269 Cal.Rptr. 656].) The relevant and considered opinion of one physician may constitute substantial evidence, even though inconsistent with other medical reports in the record. (*Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656].) Expert medical opinion, however, does not constitute substantial evidence if based on incorrect facts or legal theory or on surmise or conjecture. (*Ibid.*) "When the WCJ's finding is supported by solid, credible evidence, it is to be accorded great weight by the Board and should be rejected only on the basis of contrary evidence of considerable substantiality . . . ." (*Rubalcava, supra*, at p. 908.)

■ "In resolving the petition for writ of review, we must determine whether the evidence, when reviewed in the light of the entire record, supports the Board's decision; and in doing so, we must consider the weight or persuasiveness of all the evidence, not just whether there is substantial evidence in favor of respondents employer and insurer." (*Rubalcava* v. *Workers' Comp. Appeals Bd., supra*, 220 Cal.App.3d at p. 908.)

"This court is not bound to accept the Board's factual findings where they are unreasonable and do not withstand scrutiny when viewed in the light of the entire record, or where on a case-by-case examination we discern an inequitable result when the entire record is examined for fairness, reasonableness, and proportionality in the overall scheme of the workers' compensation law and the purposes sought to be accomplished by that law." (*Rulbalcava* v. *Workers' Comp. Appeals Bd., supra*, 220 Cal.App.3d at p. 908.)

■ The Board relied solely on Dr. Reiss's opinion. All three doctors agreed Chu was suffering from severe depression that resulted in his suicide. Both Dr. Brunton and Dr. Strobl concluded the depression was a result of work stress during the probationary period. Even Dr. Reiss acknowledged Chu's inability to meet probationary expectations contributed to the depression that resulted in the suicide.

Dr. Reiss, however, concluded that the cause of the depressive illness was Chu's "preexisting psychopathology and inability to tolerate the realization

of his own areas of weakness" which were not brought on by his employment. In support of his conclusion, Reiss relies on his review of Chu's "employment record" and refers to Chu's "history" of developing problems in his police work. Without any specific reference to Chu's employment records, Dr. Reiss stated that Chu's record "demonstrates a definite progression of difficulties from the beginning of his career until his tragic death. His record does not indicate any abrupt or acute disturbance but rather a continuing and increasing difficulty."

We find nothing in the employment records to support Dr. Reiss's conclusions.[2] The only performance evaluations contained within the record are those for Chu's probationary period. His record before the probationary period was laudatory. As stated by the City in its answer to the petition for writ of review: "After being hired in 1986 by the San Diego Police Department, as a sworn police officer, Benjamin Chu excelled in his work. This is evidenced by his personnel record as well as the testimony of co-workers and supervisors. He was very professional, a hard worker and always provided good cover. He was physically and emotionally healthy. He had no financial problems. He was active in the Korean community and was a board member of the Korean Association. He published articles in the community magazine and conducted police seminars. He received many service awards and had the admiration of his superiors and co-workers." The City acknowledged that Chu began having problems with his job performance during the second and third quarters of his one-year probation as a sergeant.

The overwhelming evidence was that Chu became depressed at not being able to perform as a sergeant, which depression, according to all medical testimony, either contributed to or caused his suicide. After years of excellent performance he was confronted with repeated criticism of his abilities. He thought nothing he could do would satisfy his supervisor. He felt he would be demoted. He worked the night shift and spent much of the day attempting to improve his writing skills. He was unable to sleep and became excessively fatigued. Medication did not help. He experienced chest pains and was hospitalized. He agonized that his job failure would result in loss of respect from his wife and the community. Shortly before he committed suicide, he was told the liaison position he had hoped for was unavailable. There is no evidence that Chu would have committed suicide absent the depression he suffered as a result of the stress and frustration he experienced as a probationary sergeant.

[2]Even assuming Dr. Reiss's conclusion that Chu suffered from preexisting psychopathology was correct, it would not preclude recovery if the suicide resulted at least in part from an industrial injury. (See, e.g., *Burnight, supra,* 181 Cal.App.2d 816; *Ballard* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d at pp. 837-839; *Redmond* v. *Workmen's Comp. Appeals Bd., supra,* 36 Cal.App.3d 302, 308.)

The City argues this case is not governed by *Burnight* and the cases following because, with the exception of *Donovan*, all the cases interpreting the "willful and deliberate" test of section 3600, subdivision (a)(6) have involved physical injury to the employee which resulted in suicide. (See, e.g., *Vandagriff* v. *Workmen's Comp. App. Bd.* (1968) 265 Cal.App.2d 854 [71 Cal.Rptr. 630]; *Beauchamp, supra,* 259 Cal.App.2d 147.) The City is incorrect.

The circumstances of *Burnight* were remarkably similar to those presented here. Burnight, a long-term employee who had performed well, was given the responsibility for converting the use of an industrial plant in Mexico. He experienced many difficulties and frustrations and the task was beyond his abilities. He was unfamiliar with the administrative duties assigned to him and worried about his ability to handle them. He encountered stress, frustration, long hours of work, lack of sleep, heart palpitations, stomach upset and a blackout. He was hospitalized in Mexico and later in the United States. He was diagnosed as having an "acute anxiety reaction with depressive and schizoid features." After discharge from the hospital, he slit his wrists and died. (*Burnight, supra,* 181 Cal.App.2d at pp. 818-819, 828.)

Both Chu and Burnight experienced physical symptoms caused by work-related stress; neither incurred a job-related physical injury. Recovery is not limited to situations in which an employee is "physically injured" on the job. Both physical and mental injuries sustained as a result of job stress are compensable.

The City also argues the WCJ erred when she found that once there was a prima facie case of industrial causation for the suicide the burden shifted to the employer to show "the suicide was not related to the employment." We need not determine whether the burden of proof was shifted to the employer in this case because, regardless of which party had the burden of proof, there was no substantial evidence to support any conclusion other than that the suicide would not have occurred without the employment-related stress and resulting disability. ■ "[I]n determining whether there is a direct causal connection between an industrial injury and a suicide, the trier of fact must, in effect, answer this question, was the injury a proximate cause of the suicide or was the suicide merely contemporaneous or coincident with the injury?" (*Burnight, supra,* 181 Cal.App.2d at p. 828.) ■ There is no evidence Chu's suicide was merely contemporaneous or coincident with his employment-related stress and resulting disability.

The City further argues that Chu willfully and deliberately took his own life within the meaning of section 3600, subdivision (a)(6), because his willpower was neither deranged nor disordered and his decision to commit suicide was undertaken "after much thought following consultation with his psychologist, his church, his friend, and an attorney." The City contends he rationally chose suicide and that his employment-related stress and resulting disability were therefore not the cause of his death.

 Suicide may occupy a person's mind for an extended period of time with the person alternately considering and dropping the idea. This does not necessarily demonstrate he ultimately committed the act with considered thought unrelated to the mental disability caused by employment-related stress. (See *Beauchamp, supra,* 259 Cal.App.2d at pp. 150-151.) The fact the decedent may have planned the suicide over an extended period does not establish that the suicide was not caused by employment-related stress. (See *Burnight, supra,* 181 Cal.App.2d at p. 826.)

It is clear from the testimony that Chu experienced dramatic swings in his mood and behavior in the days preceding his suicide; at one moment he appeared normal and at another appeared to be in severe emotional distress. On at least two occasions he expressed suicidal and homicidal intentions. He spoke to others about the stress and depression he was experiencing. Dr. Strobl in his deposition addressed whether the suicide was an impulsive or planned act and concluded the fact decedent talked to others did not evidence a planned act but rather an effort to reach out to people. In his experience, those who plan suicide over an extended period do so without confiding in others. He opined that Chu's suicide was likely formulated in a very short period of time, and was an impulsive act resulting from Chu's work-related depression. Dr. Reiss did not opine that Chu's suicide was a planned act unrelated to the disability caused by employment-related stress. To the contrary, Dr. Reiss characterized the act as "impulsive" and "irrational, immature and ultimately tragic."

 There is no testimonial or medical evidence supporting the conclusion Chu's decision to take his life was a thought-out, rational decision not proximately caused by his employment-related stress. The testimonial and medical evidence supports only the conclusion that Chu's severe, work-related depression resulted in his suicide; without the employment-caused stress he would not have committed suicide. (*Ballard* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 832, 837-838.) There was no substantial evidence to support the Board's decision.

## DISPOSITION

The order of the Board rescinding the WCJ's findings, award and orders and substituting its own findings and order is annulled. The findings, award and orders of the WCJ are reinstated.

Huffman, Acting P. J., and Nares, J., concurred.